UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
TREVOR FREDERICK,                                          :
                                                           :
                       Petitioner,     :     **08 Civ. 11216 (HB)**
                                                           :
        -against-                                 :     <u>**OPINION & ORDER**</u>
                                                           :
DAVID ROCK, Superintendent,                                :
Great Meadow Correctional Facility,                        :
                                                           :
                       Respondent.    :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Petitioner Trevor Frederick ("Petitioner") brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his April 11, 2005 conviction in the New York State Supreme Court, New York County. Petitioner was convicted of one count of attempted second-degree murder, one count of first-degree assault, three counts of first-degree burglary, and one count of second-degree aggravated harassment. The sole issue presented in his petition is whether the state trial court violated his Fourteenth Amendment right to equal protection as interpreted by the Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny, by striking all but one African-American female prospective jurors from the jury panel. For the reasons set forth below, the petition is denied.

## I.  BACKGROUND

      In the early morning hours of November 7, 2003, Petitioner, an African-American male, forced his way into the apartment of his ex-girlfriend Jenae Aragosa and stabbed both Aragosa and her companion, Chrisopher Mariconi. Aragosa survived, but was left temporarily paralyzed, with permanent immobility on her left side and loss of feeling on her right side. Mariconi also suffered a non-fatal stab wound to the neck, but died as a result of falling out of the fifth floor window of Aragosa's apartment.

      The trial began on November 10, 2004 and ended in a mistrial after one juror was unable to continue deliberating. The case was retried in February and March of 2005. Voir dire for the second trial took place on February 22, 2005 and February 23, 2005. The jury box system for selecting jurors was employed, which involves seating a group of prospective jurors in the jury

1

box for voir dire.  *See McKinney v. Artuz*, 326 F.3d 87, 89 (2d Cir. 2003) (describing the jury box method).  Justice Yates, presiding over the trial court, questioned each prospective juror. After the judge finished, the prosecution and counsel for Petitioner were given an opportunity to examine the prospective jurors and then exercise challenges for-cause and peremptory challenges.

During the first round of voir dire, the prosecution exercised a peremptory challenge to strike an African American female (Ms. Reid), with no objection, while another African American female was impaneled (Ms. Solomon).  During the second round, the prosecution struck three more African American females (Ms. Hamler, Ms. Howard and Ms. Cineus). Petitioner then raised its first *Batson* challenge to the prosecutor's exclusion of African-American women from the jury.[1]  Justice Yates denied Petitioner's *Batson* challenge, declaring "the reasons offered [by the prosecution] are race neutral and not incredible."  Tr. at 272.  During the third round of voir dire, Petitioner renewed its *Batson* challenge after the prosecution peremptorily challenged three jurors, including one African American female (Ms. Johnson). Justice Yates concluded that the prosecutor's reasons for striking Ms. Johnson were non-pretextual and denied the *Batson* challenge.  Tr. at 352.  All jurors were selected by the fourth round.

At the conclusion of jury selection, of the seven prospective jurors that were African American females, five were peremptorily struck by the prosecution (Ms. Reid, Ms. Hamler, Ms. Howard, Ms. Cineus and Ms. Johnson) and another was dismissed for cause (Ms. Simmons). Ms. Solomon was the only African American female to be impaneled. Ultimately, of the thirteen peremptory challenges exercised by the prosecution, five were used to strike prospective jurors who were African American females.

On March 11, 2005, the court declared a mistrial as to the felony murder count because the jury was hopelessly deadlocked.  On April 11, 2005, Petitioner was convicted of attempted second-degree murder, first-degree assault, three counts of burglary in the first-degree, and aggravated harassment in the second-degree.  Petitioner was sentenced to an aggregate term of 30 years' incarceration and five years of post-release supervision.

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division,

---

[1] At that point, 32 prospective jurors had been seated, and 7 had been struck for cause or consent.  Five of the 25 prospective jurors remaining were African American females.  The prosecution had used four of its eight peremptory strikes to strike African American females on the two panels.

2

First Department.  Petitioner argued *inter alia*, that the court rejected his *Batson* motion using an improper legal standard—finding the prosecutor's reasons to be "not incredible"—and without making the necessary factual findings.  On February 28, 2008, the Appellate Division modified Petitioner's sentencing fee but otherwise unanimously affirmed the conviction by the lower court.  *People v. Frederick*, 851 N.Y.S.2d 561, 562 (N.Y. App. Div. 2008).  The Appellate Division found that "[t]he prosecutor explained that he challenged one panelist for an employment-related reason, and challenged three others for demeanor-related reasons, coupled, in each instance, with a concern about the panelists employment or education level."  *Id.* at 382.  The appellate court held that "[t]he record supports the [trial] court's finding that these nondiscriminatory reasons were not pretextual," and that "[t]his finding, which essentially involved an assessment of the prosecutor's credibility, is entitled to great deference."  *Id.*  Accordingly, the Appellate Division did "not find any disparate treatment by the prosecutor of similarly situated panelists."  *Id.* at 382-383.

Petitioner timely filed this habeas petition on December 23, 2008, within 90 days of October 15, 2008, when his opportunity to file a petition for certiorari to the Supreme Court of the United States ended.  *See McKinney*, 326 F.3d at 96.

## II.  DISCUSSION

### A. Standard of Review

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal district court must accord substantial deference to a state court's decision when a federal constitutional claim has been adjudicated on the merits by the state court.  *See* 28 U.S.C. § 2254(d); *see also Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001); *Cruz v. Smith*, No. 05-CV-10703, 2010 WL 582348, at *12 (S.D.N.Y. Feb. 17, 2010).  Thus, a petitioner can only obtain habeas corpus relief by showing that the Appellate Division's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was based on an unreasonable determination of the facts presented in the state court.  28 U.S.C. § 2254(d)(1)-(2).

A state court decision is "contrary to" clearly established federal law "where the state court either applies a rule that 'contradicts the governing law' set forth in Supreme Court precedent or 'confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision' and arrives at a different result."  *Cruz*, 2010 WL 582348, at *12 (quoting

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). An "unreasonable application" of clearly established federal law occurs "when the state court identifies the correct governing legal principle, but unreasonably applies that principle to 'a set of facts different from those of the case in which the principle was announced.'" *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003)). Furthermore, to receive habeas relief under 28 U.S.C. § 2254, a petitioner must show that the state court's decision was "not only incorrect or erroneous [but] objectively unreasonable." *Rompilla v. Beard*, 545 U.S. 374, 375 (2005) (citing *Wiggins v. Smith*, 539 U.S. 510, 520-521 (2003); *see also Lockyer*, 538 U.S. at 75.

A court's acceptance of a prosecutor's proffered justification for a peremptory challenge "'is a factual determination and thus qualifies for the presumption of correctness [under 28 U.S.C. § 2254(e)(1)].'" *Valentine v. State of New York*, No. 04-CV-1411, 2006 WL 2135779, at *5 (quoting *Bryant v. Speckard*, 131 F.3d 1076, 1077 (2d Cir. 1997)). Deference will be given to factual findings by both state trial and appellate courts. *Whitaker v. Meachum*, 123 F.3d 714, 715 n.1 (2d Cir. 1997). "In the context of a habeas application from a state prisoner . . . , 'a determination of a factual issue made by a state court shall be presumed to be correct' . . . and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence." *McKinney*, 326 F.3d at 101 (2d Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)); *Cruz*, 2010 WL 582348, at *12; *Valentine v. New York*, No. 04-CV-1411, 2006 WL 2135779, at *5 (S.D.N.Y. Aug. 1, 2006).

### B. *Batson* Analysis

Petitioner asserts that the state court's decision in this case was both "contrary to" and an "unreasonable application" of federal law as set forth in *Batson v. Kentucky*, 476 U.S. 79 (1986). In *Batson*, the Supreme Court held that purposeful racial discrimination in jury selection violates the Equal Protection Clause of the Constitution. *Id*. at 85-87. The Court set forth a three-step test to be utilized when evaluating a claim of racial discrimination. At the first step of a *Batson* analysis, the defendant only has to provide "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Jones v. West*, 555 F.3d 90, 96-97 (quoting *Johnson v. California*, 545 U.S. 162, 170 (2005)). If the defendant has provided sufficient evidence, the judge proceeds to step two. Under the second step of the analysis, the non-moving party must provide race-neutral reasons for exercising its peremptory challenge. *See Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2005). "At this step of the inquiry, the issue is the facial

4

validity of the prosecutor's explanation.  Unless a discriminatory intent is inherent . . . the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991).  The last step of a *Batson* analysis requires the trial judge to assess the credibility of the prosecutor's race-neutral reasons.  The trial judge is not required to make detailed findings of fact.  "As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge." *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006) (citing *McKinney*, 326 F.3d at 100).  The Supreme Court has said that the "evaluation of the [striking attorney's] state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Hernandez v. New York*, 500 U.S. 352, 365.  Similarly, the Court has also said that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)).

Petitioner first raised a *Batson* challenge in the second round of voir dire, after the prosecution exercised four of its eight peremptory strikes against African American women (Ms. Reid, Ms. Hamler, Ms. Howard and Ms. Cineus).[2]  Petitioner's claim rests on the idea that there was a *Batson* violation because the explanations provided by the prosecution for its peremptory strikes were not similarly applied to non-protected potential jurors and were therefore inherently discriminatory.  Justice Yates noted that he did not think a level one prima facie pattern had been made out, yet proceeded to step two of the analysis when he asked the prosecution to explain its reasons for striking the prospective African American female jurors.[3]  Tr. At 268.

   *1. Ms. Hamler*

---

[2] Petitioner did not object at trial to the peremptory challenge of Ms. Reid, and as the Appellate Division correctly held, he did not preserve that claim for appeal, nor his claim that the trial court failed to follow the proper *Batson* procedure.  *People v. Frederick*, 851 N.Y.S.2d 561, 562 (N.Y. App. Div. 2008).  A party arguing that opposing counsel has a discriminatory motive in striking jurors must fully articulate this concern to the court in order to preserve it for appellate review.  *See People v. Allen*, 653 N.E.2d 1173, 1178 (1995) (citation omitted).  "When…a party raises an issue of a pattern of discrimination in excluding jurors, and the court accepts the race-neutral reasons given, the moving party must make a specific objection to the exclusion of any juror still claimed to have been the object of discrimination." *People v. James*, 784 N.E.2d 1152, 1158 (N.Y. 2002).  Although Petitioner mentioned Ms. Reid at the time of the challenge, after the prosecution offered all of its reasons for striking Ms. Hamler, Ms. Howard and Ms. Cineus, Petitioner did not demand a reason for the striking of Ms. Reid or make a note of the prosecution's failure to mention her.  Consequently, "[b]y accepting the [prosecution's] explanation without any additional objection at a time that it could have been addressed, [Petitioner] failed to preserve a challenge" with respect to Ms. Reid.  *Id.* at 272.

[3] Justice Yates stated, "[f]rankly and honestly, I don't think there was a level one prima facie pattern made out, but from an appellate point of view, it's easier for me to find a prima facie pattern there and let you explain the reasons why. So why don't you offer them." Tr. at 268.

The prosecutor stated that he had struck Ms. Hamler because she was a torts attorney who "must . . . discuss 'foreseeable' on a daily basis," which was a "critical issue" in the case at hand. Tr. at 268-269. This Court has held that employment, education and demeanor-based reasons offered by the prosecution are all race-neutral and appropriate for peremptory strikes. *See, e.g.*, *Funches v. Walsh*, No. 05-CV-2839, 2006 WL 1063287, at *6 (S.D.N.Y. Apr. 21, 2006) ("A person's employment may constitute a legitimate race-neutral reason for striking a potential juror.") (citations omitted). Petitioner argues that the prosecutor's race-neutral explanations is merely a pretext because the same principle was not applied to non-protected panelists. Petitioner points to Andrew Nagel, a white attorney, who was impaneled. Contrary to Petitioner's argument, "the uneven application of a facially race-neutral explanation does not, by itself, necessarily establish the invalidity of the explanation." *Wells v. Ricks*, No. 07-CV-6982, 2008 WL 506294, at *29 (Feb. 26, 2008) (citations omitted). The prosecutor specifically stated that he was striking Ms. Hamler because she was a torts attorney who dealt with foreseeability on a daily basis, a critical issue in the case, while Mr. Nagel, on the other hand, was an attorney who dealt primarily with mergers and acquisitions. The decision to strike an attorney who frequently deals with the very principle at issue in the case, and not another attorney who is involved in an unrelated area of the law is not so implausible as to be found pretextual. Therefore, the state court did not err in finding that the proffered reason to strike Ms. Hamler was not pretextual nor objectively unreasonable.

   2. *Ms. Howard and Ms. Cineus*

With respect to Ms. Howard and Ms. Cineus, the prosecutor's reasons for his peremptory challenges were that both women appeared soft-spoken and timid, causing concern that they would be unable to communicate well with other jurors. In *Brown v. Kelly*, this Court upheld the peremptory challenge of a juror who was perceived as "very timid in speaking" and "would [not] be able to communicate well with the [c]ourt." 973 F.2d 116, 119 (2d Cir. 1992). Petitioner maintains that the reasons given by the prosecutor for his strikes were not applied to similarly situated panelists, and were thus pretextual. In support, Petitioner first points out that the microphone was not working at the time of voir dire.[4] However, even with the microphone not

---

[4] Justice Yates told the jurors, "[t]here is a microphone they will give you to try to use, because it is important that we can all hear you. It is very sensitive. You have to get close to it and sort of aim it right. We'll start without it. The mike doesn't work." Tr. at 102.

6

working, only a few jurors had to be asked to speak up, including Ms. Howard and Ms. Cineus.[5] Petitioner further claims that Henry Gonzalez was a similarly situated juror because the prosecutor stated that he had not heard Mr. Gonzalez at one point but he was not struck.[6] However, Mr. Gonzalez was not asked to speak louder or keep his voice up, as were other jurors.[7]

In addition to striking Ms. Howard and Ms. Cineus for being soft-spoken, the prosecutor also explained that he struck them because they had jobs that suggested lower levels of education. "Lack of education . . . [has] been found to be [a] race-neutral reason for exercising peremptory challenges." *Rodriguez v. Senkowski*, No. 03-CV-3314, 2004 WL 503451, at \*34 (S.D.N.Y. Mar. 15, 2004) (citations omitted). Petitioner again points to Henry Gonzalez, a retired tool and dye maker, as well as Rosa Perez, who stuffed envelopes for Walt Disney, and Amanda Flores, a nanny, as similarly situated panelists who also held jobs that might demonstrate a lower level of education, but were not challenged by the prosecutor. However, while Mr. Gonzalez, Ms. Perez and Ms. Flores also held jobs that might indicate a lower level of education, Petitioner has not met his burden to show that the prosecutor's reasons for striking Ms. Howard and Ms. Cineus were pretextual. *See Wells*, 2008 WL 506294, at \*29. Thus, the trial court's determination that the prosecutor's proffered reasons for striking Ms. Howard and Ms. Cineus were race-neutral and not pretextual does not constitute a decision contrary to federal law or the unreasonable application of federal law.

    *3. Ms. Johnson*

Petitioner renewed its *Batson* challenge in the third round of voir dire after the prosecution peremptorily struck another African American female, Ms. Johnson. Justice Yates concluded that Petitioner had made out a prima facie case by showing that the totality of the relevant facts gave rise to an inference of discriminatory purpose. Upon moving to step two, the

---

[5] In addition to Ms. Howard and Ms. Cineus, Deborah Mordkowski, Patricia Johnson, and Jarro Trujillo were also asked to speak louder or keep their voices up. Tr. at 171, 214-215, 223, 289, 374. Of the fifty-nine prospective jurors, only these five were asked to speak up.
[6] The prosecutor stated, "Mr. Gonzalez, I didn't hear you. You said you were retired. What did you retire from?" Tr. at 127.
[7] Justice Yates told Ms. Mordkowski, "You have to speak up." Tr. at 171. When questioning Ms. Howard, he stated, "[t]here was a little noise out there and your voice was kind of low." *Id.* at 214. As to Ms. Cineus, Justice Yates told her, "[y]ou really have to shut it out." *Id.* at 223. He told Ms. Johnson, "[y]ou have to keep your voice up." *Id.* at 289. He told Mr. Trujillo, "[i]f you're louder, then I think I can hear you." *Id.* at 374. It is not clear from the record whether the prosecutor did not hear Mr. Gonzalez because he was soft-spoken or another reason. It is not readily apparent that the prosecutor's demeanor-based reason for striking Ms. Howard and Ms. Cineus applied to any other prospective jurors.

prosecution proffered three reasons for the strike.  First, the prosecution referenced Ms. Johnson's hostility toward a particular voir dire question.  Petitioner argues that the record does not reflect that Ms. Johnson gave the prosecutor any type of hostile look in response to a voir dire question.[8]  However, just as "nervousness cannot be shown from a cold transcript," *Snyder v. Louisiana*, 552 U.S. 472, 479 (2008), a prospective juror's hostile look or angry response may not be reflected in the written word.  Petitioner also claims that the trial judge erred in accepting this reason because Justice Yates was unable to confirm that she became angry or looked hostile.  Even though Justice Yates could not confirm that he saw Ms. Johnson display any hostility in her response, the prosecution offered two additional reasons from which he could determine that there was no discriminatory intent when striking Ms. Johnson.

       The prosecutor cited Ms. Johnson's employment as a legal assistant as the second reason for striking her.  Employment as a legal assistant has been upheld as a valid, race-neutral reason for a peremptory strike.  *See Copeland v. Walker*, 258 F. Supp. 2d 105, 127 (E.D.N.Y. 2003) (citing *United States v. Johnson*, 941 F.2d 1102 (10th Cir. 1991)) (upholding peremptory challenge of prospective jurors who were legal secretaries because they "may have claimed greater knowledge of the legal system than other members of the jury.").  Petitioner claims that this reason was not applied to similarly situated panelists, as the prosecution did not challenge Gregory Mercado, a non-African American paralegal.  Again, while the fact that the prosecutor exercised a peremptory strike against Ms. Johnson and not Mr. Mercado weakens this explanation, it does not automatically lead to the conclusion that there was discriminatory intent.  *See United States v. Alvarado*, 951 F.2d 22, 25 (2d Cir. 1991); *Wells*, 2008 WL 506294, at *29.

       The prosecutor's third reason for striking Ms. Johnson was based on her failure to laugh at a humorous comment made by the judge.  Petitioner claims that this reason is implausible and fantastic.  Nevertheless, the Second Circuit has upheld challenges to prospective jurors based on other demeanor-based explanations, such as a juror who "made 'facial expressions' during voir dire" and was "staring strangely."  *United States v. Ruiz*, 894 F.2d 501, 506 (2d Cir. 1990).

---

[8] The prosecutor claims that Ms. Johnson displayed hostility during the following exchange:
    PROSECUTOR:  Anything about your work there that would affect you, prevent you from evaluating a murder case?
    MS. JOHNSON:  No.
    PROSECUTOR:  Anything about the nature of the case or your personal experience; anything you have heard so far?
    MS. JOHNSON:  No.
Tr. at 311-312.

While Justice Yates was sincere in giving his instruction, it did have a humorous undertone, and it is not objectively unreasonable that the prosecutor took notice of the few jurors who did not laugh. Thus, the trial court did not err in accepting the prosecutor's three reasons for striking Ms. Johnson. In my view the reasons advanced by the prosecution for striking Ms. Johnson and other prospective African American jurors were farfetched, and it is only the language of the AEDPA that mandates substantial deference to state court decisions that leads me to deny this petition.

Consequently, I find that Petitioner has not, by clear and convincing evidence, rebutted the presumption of correctness of the state court's finding that the prosecutor's stated reasons for challenging African American women were not pretextual. Therefore, Petitioner has failed to demonstrate that the Appellate Division's decision was contrary to, or involved an unreasonable application of, clearly established Federal law.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus is DENIED. The Clerk of the Court is instructed to close this case and remove it from my docket.

SO ORDERED.

June 10, 2011
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.

9